1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CR F 05-00374 AWI WMW** |
| | ) | |
| **Plaintiffs-Appellees**, | ) | |
| | ) | **ORDER ON APPELLANT'S** |
| **v.** | ) | **APPEAL OF MOTION TO** |
| | ) | **SUPPRESS AND ORDER ON** |
| **DAVID JOHN PRAMIK,** | ) | **APPELLANT'S MOTION FOR** |
| | ) | **RECUSAL** |
| **Defendant-Appellant** | ) | |
| | ) | |

**PROCEDURAL HISTORY**

This is an appeal from a conviction for operating a motor vehicle with a blood-alcohol concentration in excess of .08% in violation of 36 C.F.R. § 4.23(a)(1).[1]  On January 31, 2005, Appellant David John Pramik ("Appellant") filed a motion to suppress evidence obtained as a result of the warrantless stop of his vehicle.  On June 30, 2005, Magistrate Judge Wunderlich denied Appellant's motion to suppress.  On August 30, 2005, Appellant agreed to enter a conditional plea of guilty to the charge of operating a motor vehicle with a blood alcohol concentration in excess of .08%.  In this appeal, Appellant challenges the magistrate's denial of

---

[1]36 C.F.R. § 4.23 (a)(1) reads, "Operating or being in actual physical control of a motor vehicle is prohibited while under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation."

the motion to suppress, and failure to *sua sponte* recuse himself under U.S.C. § 455,[2] based on remarks he made at the close of the suppression hearing.  For reasons discussed below, this court will affirm the magistrate's ruling on Appellant's motion to suppress and find that the magistrate's failure to recuse himself was not in error.

## FACTS/FACTUAL ALLEGATIONS[3]

On June 30, 2005, a hearing was held on Appellant's motion to suppress.  At that hearing, Ranger Jeremy Phillips ("Phillips") testified as follows.

Phillips has been employed as a Ranger in Yosemite National Park for approximately eighteen months.  Suppression Hearing Transcript at 7-8.  During the five years of his employment with the park service, he received classroom instruction, on-the-job training, and four wet lab training sessions regarding the evaluation and arrest of persons driving under the influence.[4]  Id. at 3.  Prior to the traffic stop at issue, Phillips made five arrests for persons driving under the influence with blood alcohol levels over .08%.  Id. at 6.  In each of these arrests, Phillips observed that the persons had "bloodshot, glassy eyes."  Id. at 7.

On October 4, 2004, at approximately 8:00 p.m., Phillips was on patrol in Yosemite National Park.  Id. at 8.  As Phillips turned into the entrance of the Camp Four parking area, described as "pretty dark" and made visible by a light source forty feet away, he observed Appellant's green Chrysler backing out of a parking space and attempting to turn towards the road.  Id. at 9, 16.  After the attempt failed, Phillips observed Appellant attempt to leave his parking space a second time.  Id. at 9.  As Appellant pulled his vehicle approximately four feet close to Phillips, Phillips observed that the driver had "bloodshot, watery, and glassy eyes."  Id.

---

[2]28 U.S.C. § 455 (a) and (b) read, in pertinent part, "any ... magistrate ... of the United States shall disqualify himself in any proceeding in which his im partiality be reasonably be questioned. He shall also disqualify himself ... where he has personal bias or prejudice concerning a party."

[3]The facts are taken from the transcript of the motion to suppress hearing.

[4]Wet lab sessions require trainees to perform sobriety tests on five to eight people who have various levels of intoxication to determine the level of blood-alcohol content.

1 at 9-10.  Based on Appellant's physical appearance, Phillips believed he had possibly been

2 drinking.  Id.  Upon meeting eye to eye with Phillips, Appellant gave a "startled" reaction, sat up

3 in his car, and pulled into the space immediately to his right.  Id. at 10.  Next, Phillips observed

4 Appellant return to his original parking space.  Id.  During this time, Phillips twice observed that

5 Appellant's license plate light was not working, in violation of California Vehicle Code section

6 24601.[5]  Id. at 11.  He proceeded to stop Appellant for the defective light.  Id.  Appellant stepped

7 out and used the side of his vehicle to balance himself as he moved toward the rear of his vehicle.

8 Id.

9          Though he wrote a total of three tickets, which included an infraction for driving without

10 insurance and driving under the influence of alcohol, Phillips did not issue a ticket for the

11 defective license plate.[6]  Id. at 15-16, 44.  Phillips normally does not write tickets for every traffic

12 infraction he observes, but instead issues citations according to his judgment of the severity of

13 the infraction.  Id. at 16-17.

14          On September 30, 2004, five days prior to his arrest, Appellant had his car serviced with a

15 courtesy inspection at a car dealership in Walnut Creek.  Id. at 25.  Following this inspection, a

16 piece of paper was placed in the mirror saying that all of the car's lights were working.  Id.  The

17 automotive technician who performed the courtesy inspection, Jack Bielecki ("Bielecki"),

18 testified that the inspection included an inspection of the car's lamps.  Id. at 19.  This inspection

19 consisted of turning on the lights and walking around the car to check that all of the lights were

20 working properly.  Id. at 21.  However, Bielecki testified that it is possible for the electrical

21 wiring to function while the vehicle is stationary, but not when the vehicle is in motion.  Id. at 22.

22          On October 5, 2005, Appellant was released from custody and returned to his car at the

23

24 _____

25 [5]California Vehicle Code Section 24601 states, "[e]ither the taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear license plate during darkness and render it clearly legible from a distance of 50 feet to the rear."

26

27 [6]During the cross-examination of Phillips at the suppression hearing, Phillips testified that "the reason [he] was looking at the vehicle was the driving behavior."  Id. at 13.

28                                                  3

1   Camp Four parking lot to check if his license plate light was functioning properly.  Id. at 29.

2   While the vehicle remained stationary, Appellant walked to the back of the car and saw that the

3   license plate light was functioning.  Id.  He called Assistant Federal Defender Carrie Leonetti

4   ("Leonetti") and asked her to meet him at the Camp Four parking lot.  Id. at 29-30.

5        Leonetti arrived at the Camp Four parking lot approximately ten or fifteen minutes after

6   receiving this call.  Id. at 37.  She observed that the lights were in working order.  Id. at 37.  She

7   crouched down and concluded that the light had not been altered because it had a covering of

8   dust on it, there was no evidence of fingerprints, and it wasn't loose.  Id. at 38.  During Leonetti's

9   inspection of the license plate light, the vehicle remained stationary.  Id. at 40.

10       At the suppression hearing on June 30, 2005, Appellant's counsel argued that "there's

11  overwhelming evidence . . . that the license plate was functioning and that the officer is not being

12  candid with the Court."  Id. at 45-46.  In response to this argument, the Government stated that,

13  "if we are going to suggest that someone might be misrepresenting the facts, I would suggest that

14  it is not the ranger in this case who has a career . . . and realizes the importance of his testimony

15  before this Court, but perhaps the defendant who has prior DUIs and has more of an issue here."

16  Id. at 47.

17       When the parties concluded their arguments, the magistrate stated, in relevant part:

18           I'm not prepared to conclude that this ranger came in to this Court and
         perjured himself this morning.  There are plenty of other explanations for this
19       short of one's lying or the other is lying.
             This - as [the prosecutor], has pointed out, this defect could be in effect
20       only when the car is running.  There could be the vibrations associated with the
         running of the engine, the movement of the car.  Indeed Mr. Pramik could have
21       gone back and knowing how important it was to have an operational license plate,
         he could have simply gone back and screwed it in tight or something like that.
22           But I'm not going to assume that Ranger Phillips came in here today and
         put his career on the line simply to perjure himself and get Mr. Pramik in trouble.
23
24  Id. at 48.  After making this remark, the magistrate denied Appellant's motion to suppress.  Id.

                              **SCOPE OF REVIEW**
25
26       An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of

27  the district court and must first be brought in the district court before prosecution in the court of

28                                    4

appeals." United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. § 3402. The district court's review of the magistrate's judgment is governed by the same standards as an appeal from a judgment of a district court to the court of appeals. Fed. R. Crim. P. 58(g)(2); United States v. McFarland, 369 F. Supp.2d 54, 56-57 (D. Me. 2005); United States v. Fautanu, 751 F. Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F. Supp. 736, 738-739 (E.D. Cal. 1983). In other words, the district court "is to apply the same scope of review as the United States Circuit Court of Appeals would apply in considering an appeal of a judgment from a United States District Court." United States v. Charrington, 285 F. Supp. 2d 1063, 1066 (S.D. Ohio 2003).

Accordingly, the court will review de novo a denial of a motion to suppress as to issues of law, while the lower court's factual findings are reviewed for clear error. United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005); United States v. Bynum, 362 F.3d 574, 578 (9th Cir. 2004). Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc). A denial of a motion to suppress may be affirmed "on any ground fairly supported by the record." United States v. Koshnevis, 979 F.2d 691, 695 (9th Cir. 1992); United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). "When a [lower] court does not enter a specific finding, [the reviewing court] will uphold the result if it is reasonably supported in the record." Koshnevis, 979 F.2d at 694; United States v. Gomez, 846 F.2d 557, 560 (9th Cir. 1988). The evidence in the record is viewed "in the light most likely to support the [lower] court's decision." Gomez, 846 F.2d at 560.

Credibility determinations are matters left to the trier of fact. United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir. 1988). The trial judge is in the unique position to observe the demeanor of both the defendant and law-enforcement officers while the court of appeals has only the cold record. Id. Accordingly, the court of appeals reviews the district court's credibility determinations for clear error. Id. Under the clearly erroneous standard, a federal court of

1   appeals gives "special deference" to a district court's credibility determinations when ruling on a

2   motion to suppress.  United States v. Nelson, 137 F.3d 1094, 1110 (9th Cir. 1998).  On matters

3   of credibility, the Ninth Circuit will rarely overturn the factual findings of a district court judge.

4   United States v. Attson, 900 F.2d 1427, 1433 (9th Cir. 1990).  When a trial judge's finding is

5   based on a decision to credit the testimony of a witness who has told a coherent and facially

6   plausible story, that finding, if not internally inconsistent, can virtually never be clear error.

7   Anderson v. Bessemer City, 470 U.S. 564, 575 (U.S. 1985);  Conrad v. United States, 447 F.3d

8   760, 768 (9th Cir. 2006).

## ARGUMENTS

10   *Appellant's Argument*

11       Appellant argues that his arrest occurred in violation of the Fourth Amendment.  As his

12   arrest was without a warrant, the Government failed to prove by a preponderance of the evidence

13   that Phillips had probable cause for the seizure.  The magistrate made no findings of fact to

14   support a determination that the license plate light was defective at the time his vehicle was

15   stopped, and no attempt to discredit the testimony of Appellant, Bielecki, or Leonetti was made.

16   The magistrate merely speculated upon the theoretical possibility that the light could have been

17   defective when Phillips saw Appellant operating his vehicle.  This reasoning impermissibly

18   shifted the burden of proof by requiring him to disprove every possible scenario by which

19   probable cause theoretically could have existed.

20       As for the issue of disqualification under 28 U.S.C. § 455, Appellant argues that the

21   magistrate committed plain error by failing to recuse himself after making remarks which

22   indicated his inability to disbelieve the testimony of a law-enforcement officer.  First, Appellant

23   contends that the magistrate's remarks satisfied both prerequisites of the "extrajudicial source"

24   doctrine established by the Supreme Court,[7] as they revealed an opinion of law-enforcement

25

26       [7]The "extrajudicial source" doctrine reads, in pertinent part, "predispositions developed during the course
    of a trial will sometimes (albeit rarely) suffice . . . some opinions acquired outside the context of judicial proceedings
27   will not suffice."  Liteky, 510 U.S. at 555.

28                                              6

1   officers that derives from an extrajudicial source and reveal such a high degree of favoritism to

2   make fair judgment impossible.  Appellant interprets the magistrate's remarks to mean that he

3   could not believe that law-enforcement officers, generally, do not "put their careers on the line"

4   and "perjure themselves," and argues that this constitutes the type of deep seated favoritism that

5   would make it impossible for a criminal defendant to get a fair judgment on credibility issues.

6   Also, Appellant analogizes the magistrate's remarks to those of a judge who was dismissed after

7   expressing his sentiments about a postmaster's character: "I know [the Postmaster], and he is an

8   honorable man and I know he would never intentionally discriminate against anybody."  Roberts

9   v. Bailar, 625 F.2d 125, 127 (6th Cir. 1980).  Appellant argues that the magistrate has shown a

10  similar favoritism toward the character of law-enforcement officers generally.

11          *Appellee's Argument*

12          The Government argues that the evidence presented at the suppression hearing supports

13  the existence of either probable cause, or reasonable suspicion, and that the magistrate did not

14  place an improper burden on Appellant.

15          The Government contends that Phillips' observance of the traffic violation was sufficient

16  to establish probable cause.  Phillips observed the defective license plate light three times and

17  this gave him probable cause to make the traffic stop.  As indicated by the testimony of Bielecki,

18  it was reasonable for the magistrate to conclude that the electrical wiring could be operational

19  while stationary, but not while the vehicle was in motion.  Moreover, given the severity of

20  driving under the influence, it was reasonable for Phillips to exercise his judgment and not issue

21  a citation for the defective license plate light.

22          Assuming *arguendo* that Phillips did not have probable cause for a defective license

23  plate, Appellant's physical appearance was sufficient to give him a reasonable suspicion that

24  Appellant was driving under the influence of alcohol.  Considering Phillips' experience with

25  intoxicated drivers, Appellant's " bloodshot eyes" and irregular driving behavior were sufficient

26  to give him reasonable suspicion that he  was intoxicated.  Phillips had five years of experience,

27

28                                              7

1    during which he participated in training to recognize drivers under the influence, and arrested

2    thirty-five persons for drunk driving.  Given the totality of circumstances, which includes

3    Appellant's two unsuccessful attempts to exit the parking lot, his "bloodshot" eyes, and his

4    startled reaction to seeing Phillips, there was reasonable suspicion that Appellant was driving

5    under the influence of alcohol.

6         Regarding the magistrate's failure to recuse himself, the Government argues that the issue

7    has not been preserved.  Given that Appellant did not state an objection during the suppression

8    hearing, nor submit a motion to have the magistrate recuse himself, he did not preserve the issue

9    for appeal.

10        Also, the Government argues that the remarks are not sufficient grounds for recusal.

11   Given that the magistrate asked questions of all witnesses for clarification, he was not partial to

12   either side.  Additionally, the remarks were based upon the testimony of the witnesses at the

13   hearing, were only directed to the specific testimony of Phillips, and were made at the conclusion

14   of the presentation of evidence.  Further, the remarks do not indicate previous knowledge of the

15   officer or a disposition favoring law-enforcement officers.

16        *Appellant's Reply*

17        Appellant argues that the magistrate did not rule on the issue of reasonable suspicion and

18   so it is precluded from consideration by this court.  Assuming *arguendo* that this court is not

19   precluded from considering this issue, Appellant argues that the record does not support the

20   Government's assertion that the stop was justified by reasonable suspicion.  As Phillips testified

21   that the sole reason he stopped Appellant was for the license plate light violation, Appellant

22   argues that the testimony contradicts the assertion that he found a reasonable suspicion.

23        Appellant compares this case to United States v. Davis, 459 F.2d 458, 459 (9th Cir.

24   1972), where the court held that the Government erroneously advanced a new justification for the

25   traffic stop because the record was "barren of proof" to support this justification.  Appellant

26   emphasizes that Phillips stopped him for the defective license plate light, and not because he

27

28                                                     8

suspected him of being under the influence, and argues that this casts doubt on the Government's retroactive justification.  Also, Appellant argues that Phillips' observance of his driving behavior and his "bloodshot eyes" do not amount to reasonable suspicion.

Appellant also points this court to United States v. Colin, in which the Ninth Circuit found that the officer did not have a reasonable suspicion that the driver was under the influence because "[the officer] did not conduct a field test or ask [the driver] if he had been drinking when he stopped the car."  314 F.3d 439, 446 (9th Cir. 2002).  Similarly, Appellant argues that Phillips did not have reasonable suspicion because he told Appellant that he was pulled over for a defective license plate light.

In response to the Government's argument that the issue of recusal was waived, Appellant argues that the magistrate's remarks came at the end of the suppression hearing and could not have been anticipated beforehand.  Moreover, plain errors may be challenged in an Appellate court, even though they were not challenged in the trial court, when they affect substantial rights.

While the Government argues that the magistrate's remarks were directed specifically towards Phillips, Appellant argues that there was no evidence offered during the hearing related to the career consequences of Phillips of an adverse ruling on the issue of his credibility.  As the ruling was a determination of whether he would ever commit perjury, the magistrate's refusal to discredit him came from an extrajudicial source which rendered him unable to rule impartially.

As for the "extrajudicial source" doctrine explained in Liteky, Appellant argues that extrajudicial bias is not the exclusive basis for recusal, even if it springs from events occurring at trial, if it is so extreme as to display clear inability to render fair judgment.

Finally, Appellant asks this court to take judicial notice, pursuant to Fed. R. Evid. 201 (b),[8] of the following facts: 1) the magistrate who denied Appellant's motion has been sitting as

---

[8]Fed. R. Evid. 201 (b) reads, "a judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

the sole, full-time magistrate in Yosemite National Park for approximately twenty-two months;

2) during that time he has presided over numerous dispositive defense motions and bench trials;

3) during that time, that magistrate has never granted a contested dispositive motion or rendered

a verdict of not guilty in the bench trial; 4) during that time, the magistrate never discredited or

ruled adversely to the testimony of any law-enforcement officer testifying before him.  Pursuant

to Fed. R. App. P. 10 (e),[9] and in response to the Government's invitation to do so,[10] Appellant

requests that this court permit him to expand the appellate record with docket reports and

transcripts documenting these alleged facts.

## LEGAL STANDARD

### *Probable Cause and Reasonable Suspicion*

"The 'touchstone of the Fourth Amendment is reasonableness,'" and the proper function

of the Fourth Amendment "'is to constrain, not against all intrusions . . . but against intrusions

which are not justified in the circumstances, or which are made in an improper manner." United

States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (quoting Florida v. Jimeno, 500 U.S. 248, 250

(1991) and Schmerber v. California, 384 U.S. 757, 768 (1966)).  Traffic stops are seizures and

subject to the Fourth Amendment's reasonableness requirement.  See United States v. Arvizu,

534 U.S. 266, 273 (2002); Delaware v. Prouse, 440 U.S. 648, 653-55 (1970).  Although an

investigatory traffic stop is justified if a police officer has probable cause to believe that an

offense has occurred,[11] "the Fourth Amendment requires only reasonable suspicion in the context

[9]Fed. R. App. P. 10(e) reads, "if anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded: (a) on stipulation of the parties; (b) by the district court before or after the record has been forwarded; (c) or by the court of appeals."

[10]In its Response Brief, the Government distinguishes this case from Liteky and points out that "defendant presents no evidence that this judge always believes law-enforcement officers or always denies the defendant's motions that come before him."

[11]"Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." United States v. Ortiz-Hernandez, 427 F.3d 567, 573 (9th Cir. 2005).

of investigative traffic stops." United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000); see also Willis, 431 F.3d at 717; United States v. Miguel, 368 F.3d 1150, 1153 (9th Cir. 2004). "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that a particular person detained is engaged in criminal activity." Miguel, 368 F.3d at 1153; Lopez-Soto, 205 F.3d at 1105. A police officer's inferences must "be grounded in objective facts and be capable of rational explanation." Lopez-Soto, 205 F.3d at 1105. Reasonable suspicion is determined by examining the "totality of the circumstances" and by considering "all relevant factors" to see whether the officer had a "particularized and objective basis" for suspecting criminal activity. Arvizu, 534 U.S. at 273; United States v. Fernandez-Castillos, 324 F.3d 1114, 1117 (9th Cir. 2003); Colin, 314 F.3d at 442. "Officers are encouraged to draw upon their own specialized training and experience in assessing the 'totality of the circumstances.'" Colin, 314 F.3d at 442 (citing Arvizu, 534 U.S. at 273); Lopez-Soto, 205 F.3d at 1105. "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." Arvizu, 534 U.S. at 277. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990); see also Arvizu, 534 U.S. at 273-274.

        Additionally, the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. Whren vs. United States, 517 U.S. 806, 813 (U.S. 1996). Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. Id. The arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. Devenpeck v. Alford, 543 U.S. 146, 153 (U.S. 2004). In other words, the officer's "subjective reason for making the arrest need not be

1   the criminal offense as to which the known facts provide probable cause." Id.

2       *Recusal*

3       Title 28 of the United States Code reads, in pertinent part: "Any . . . [magistrate judge] of

4   the United States shall disqualify himself in any proceeding in which his impartiality might

5   reasonably be questioned.  He shall also disqualify himself . . . [w]here he has a personal bias or

6   prejudice concerning a party . . ." 28 U.S.C. § 455 (a) - (b) (1948).  Generally, a judge is required

7   to recuse himself when a reasonable person with knowledge of all the facts would conclude that

8   the judge's impartiality could reasonably be questioned.  United States v. Winston, 613 F.2d 211,

9   222 (9th Cir. 1980).  However, opinions formed by a judge on the basis of facts introduced or

10  events occurring in the course of the current proceedings do not constitute a basis for bias or

11  partiality unless they display a deep seated favoritism that would make fair judgment impossible.

12  Liteky vs. United States, 510 U.S. 540, 555 (U.S. 1994).  Indeed, a judge must form judgments of

13  the actors in order to render decisions in trials.  Id. at 551.

14      The "extrajudicial source" doctrine applies to 28 U.S.C.A. § 455 (a).  Under this doctrine,

15  the fact that an opinion held by a judge derives from a source outside judicial proceedings is not a

16  necessary condition for "bias or prejudice" recusal, since predispositions developed during the

17  course of a trial will sometimes suffice.  Liteky, 510 U.S. at 551.  Nor is it a sufficient condition

18  for "bias or prejudice" recusal, since some opinions acquired outside the context of judicial

19  proceedings will not suffice.  Id.  However, a favorable disposition can also deserve to be

20  characterized as "bias" because, even though it springs from the facts adduced or the events

21  occurring at trial, "it is so extreme as to display clear inability to render fair judgment."  Id.

22      Failure to move for recusal at the trial level does not preclude raising the issue on appeal

23  under § 455, but the party will bear a greater burden in demonstrating that the judge erred in

24  failing to grant recusal.  Noli v. Commissioner, 860 F.2d 1521, 1527 (9th Cir. 1988);  United

25  States v. Sibla, 624 F.2d 864, 868 (9th Cir. 1980).  Under such a circumstance, the reviewing

26  court must determine whether the judge erred in failing *sua sponte* to recognize obvious grounds

27

28                                          12

1   for recusal under § 455.  Id.  When asserting that the trial judge erred by failing to disqualify

2   himself, defendant's burden on appeal may be heavier than under the standard for reviewing

3   judicial disqualification cases when the claim has first been asserted in the district court.  Weiss

4   v. Sheet Metal Workers Local No. 544 Pension Trust, 719 F.2d 302, 304 (9th Cir. 1983).

5                                    **DISCUSSION**

6        _Probable Cause_

7        The magistrate did not make express findings of fact, but did hold implicitly that probable

8   cause for the traffic stop existed in denying the motion to suppress.  Appellant argues that the

9   record does not support the Government's assertion that the stop was justified by probable cause

10  or by reasonable suspicion.  Generally, it is not necessary to determine if probable cause existed

11  for the detention as reasonable suspicion is all that is necessary for a reasonable traffic stop.

12  Lopez-Soto, 205 F.3d at 1104-05.  Reviewing the record in the light most favorable to the

13  magistrate court's ruling, there was both probable cause and reasonable suspicion for Appellant's

14  detention.

15       Phillips observed the license plate light to be non-functioning three times.  When Phillips

16  observed Appellant move back into his original parking space, he twice observed that the license

17  plate light was defective.  Thereafter, he pulled his patrol car behind Appellant's car and

18  observed that the license plate light was defective a third time.  While the testimony of

19  Appellant, Bielecki, and Leonetti indicates that the license plate light was functioning before and

20  after the time of the traffic stop, it is possible, as indicated by the testimony of the Bielecki, that

21  the electrical wiring was not functioning while the car was moving.  Further, time had elapsed

22  between Bielecki's observations, Leonetti's observations and Phillip's observations.  Under the

23  clearly erroneous standard, a court of appeals gives special deference to a district court's

24  credibility determinations when ruling on a motion to suppress.  Nelson, 137 F.3d at 1110. When

25  a trial judge's finding is based on a credibility determination of a witness who has told a facially

26  plausible story, that finding, if not internally inconsistent, can virtually never be clear error.

27

28                                        13

Conrad, 447 F.3d at 768.  The magistrate did not impermissibly shift the burden of proof on

Appellant.  Given Bielecki's testimony regarding a light not functioning while moving, and given

the passage of time between Bielecki's and Leonetti's observations, Phillips' observation is not

inconsistent nor incoherent.  The magistrate could reasonably believe Phillips, as well as

Appellant, and still conclude that the light was not functioning.  Since Phillips' testimony alone

establishes probable cause and is not "incredible," the record supports a finding of probable

cause to stop based on a defective light.

Additionally, given that Phillips observed Appellant with "watery, bloodshot, glassy

eyes," observed him driving irregularly in the Camp Four parking lot, and observed him give a

startled reaction, the totality of circumstances created an articulable reasonable suspicion that

Appellant was driving under the influence.[12]  It is undisputed that Appellant had "watery,

bloodshot, glassy eyes" when Phillips pulled his car approximately four feet next to Appellant.

Phillips testified at the hearing that he received training to identify drunk drivers through their

physical appearance, which included "bloodshot eyes."  He also testified that, in the past, he

made thirty five arrests of drunken drivers, and five in Yosemite National Park prior to

Appellant's arrest.  In each case at Yosemite National Park, the person had a blood alcohol level

above .08%, and "bloodshot, glassy eyes," just like Appellant.[13]  Further, in the Camp Four

parking lot, Phillips observed Appellant make two failed attempts to back out of a parking space

and turn towards the road.  When Appellant moved his car approximately four feet close to

Phillips, Appeallant gave a "startled" reaction, pulled into another parking space for a few

[12]The Davis case is distinguishable.  In Davis, the Government advanced a new justification for a traffic
stop on appeal based upon the manner in which the car was driven.  Davis, 459 F.2d 458 at 459.  The court held that
the record was "barren of proof" because the officer that stopped the car did not give any testimony.  Id. at 459-460.
Here, however, the officer gave testimony that established reasonable suspicion of drunk driving; the record is not
"barren of proof" as in Davis.

[13]The Colin case is distinguishable.  In Colin, the failure of the officer to perform a field sobriety test
convinced the court that the officer did not have reasonable suspicion that the defendant was driving under the
influence.  Colin, 314 F.3d at 446.  Here, Phillips asked Appellant whether he had been drinking and also performed
a sobriety test.  See Appellant's Excepts from the Record / Exhibit 1 to Appellant's Motion to Suppress.

14

1   seconds, then pulled back into his original parking space.  A reasonable officer could conclude

2   that this behavior was irregular and that, under the totality of circumstances, there was reasonable

3   suspicion of driving under the influence of alcohol.

4          Appellant emphasizes that Phillips testified that the license plate light violation was the

5   sole reason he stopped Appellant, and that this testimony contradicts the Government's assertion

6   that he formed a reasonable suspicion that the defendant was driving while intoxicated.

7   However, the subjective intentions of law-enforcement officers play no role in probable cause

8   Fourth Amendment analysis.  Accordingly, Phillips' subjective reason for making the stop need

9   not be the criminal offense as to which the known facts provide probable cause.  Devenpeck, 543

10  U.S. at 153.  The traffic stop did not offend the Fourth Amendment.

11          *Recusal*

12          As an initial matter, the court does not find that Appellant waived the issue of recusal.

13  First, the right to trial by an impartial judge "is a basic requirement of due process."  See In Re:

14  Murchison, 349 U.S. 133, 136 (1955).  Plain errors that affect substantial rights, such as the due

15  process requirement, may be challenged in an appellate court, even though they were not brought

16  to the attention of the trial court.  United States v. Vonn, 535 U.S. 55, 62 (2002).  Further, the

17  Supreme Court has held that an appellate court has discretion to correct the error when it

18  seriously affects the fairness, integrity or public reputation of the judicial proceedings.   United

19  States v. Olano, 507 U.S. 725, 736-737 (1993).  United States v. Atkinson, 297 U.S. 157, 160

20  (1936).  Accordingly, the issue of recusal is subject to plain error review.  Second, the issue of

21  the magistrate's recusal could not been foreseen by Appellant before the close of the suppression

22  hearing.  Finally, while failure to move for recusal at the trial level does not preclude raising the

23  issue on appeal under § 455, Appellant bears a greater burden in demonstrating that the judge

24  erred in failing to grant recusal.   Noli v. Commissioner, 860 F.2d 1521, 1527 (9th Cir. 1988);

25  United States v. Sibla, 624 F.2d 864, 868 (9th Cir. 1980).

26          Appellant argues that the magistrate's remarks reveal an opinion that derives from an

27

28                                         15

1   "extrajudicial source," and also reveal such a high degree of favoritism to make fair judgment

2   impossible, and that recusal is appropriate under the "extrajudicial source" doctrine.  However,

3   Appellant erroneously  interprets the magistrate's remarks to mean that he believes

4   law-enforcement officers do not "put their careers on the line" and "perjure themselves" simply

5   to get defendants "in trouble."   The magistrate stated that he would not assume that "*this* Ranger

6   came in here today and put *himself* on the line simply to perjure *himself* and get Mr. Pramik in

7   trouble."  Suppression Hearing Transcript at 48  (emphasis added).   This remark was made

8   specifically about Phillips, and was made at the close of all testimony.  There is no indication that

9   the magistrate meant to suggest that he could never disbelieve a law-enforcement officer's

10  version of events.  He merely remarked that he found it difficult to assume that "this Ranger"

11  perjured himself.  More importantly, the record indicates that the remark was made in response to

12  Appellant's assertion that Phillips was "not being candid with the court," and to the

13  Government's counter that Appellant was potentially "misrepresenting the facts."  Id. at 45-47.  It

14  was not unreasonable for the judge to respond to these arguments.

15          While Appellant argues that the magistrate's refusal to discredit Phillips came from an

16  "extrajudicial source," the record indicates that the magistrate formed his disposition about

17  Phillips during the course of proceedings while listening to the testimony of all witnesses.  The

18  "extrajudicial source" doctrine holds that an opinion held by a judge that derives from a source

19  outside judicial proceedings is not a necessary condition for recusal, since predispositions

20  developed during the course of the trial will sometimes suffice.  Liteky, 510 U.S. at 551.

21  However, it was not unreasonable for the magistrate to make a character determination at the end

22  of the suppression hearing, and his remark was not so extreme as to display a clear inability to

23  render a fair judgment on Appellant's motion to suppress.  Indeed, as the Supreme Court in

24  Liteky explained, a judge has to form judgments of the participants in a trial or he would never

25  be able to render a decision.  Id.

26          Appellant points this court to Roberts, 625 F.2d at 127, where the judge erroneously

27

28                                              16

1   failed to recuse himself after stating, "I know [the Postmaster], and he is an honorable man and I

2   know he would never intentionally discriminate against anybody." Id.  However, this case is

3   distinguishable.  In Roberts, the judge made comments that revealed an opinion about the

4   officer's character that was formed prior to the proceedings.  There is no such opinion here.  As

5   he did with all of the witnesses, the magistrate formed his opinion of Phillips by listening to

6   testimony and asking for clarification where necessary. Id. at 17.

7       Finally, Appellant requests to expand the appellate record with docket reports and

8   transcripts documenting the magistrate's history that the magistrate has never discredited the

9   testimony of any law-enforcement official.

10      Appellant's request to expand the appellate record with docket reports and transcripts

11  documenting the magistrate's history is denied.  First, Appellant should have made the motion to

12  add to the record in the opening brief and not in the reply brief.  Second, given the context of the

13  comments, there does not appear to be an issue as to recusal.  Third, the Government does not

14  appear to have asked Appellant to provide evidence, rather the Government was distinguishing

15  Liteky from the case at bar.  Finally, Rule 10(e) has generally been interpreted to mean that if

16  anything material to either party is omitted from the record by error or accident, the parties by

17  stipulation, or the court of appeals, on proper suggestion or of its own initiative, may direct that

18  the omission be corrected, and if necessary that a supplemental record be certified and

19  transmitted.  United States v. Garcia, 997 F.2d 1273, 1278 (9th Cir. 1993) (holding that

20  supplementation of the record was not erroneous where the district court overlooked entry of a

21  written order after it telephonically denied the defendant's motion to suppress);  Townsend v.

22  Columbia Operations, 667 F.2d 844, 849 (9th Cir. 1982) (holding that documents were properly

23  included in the record on appeal by order under Rule 10(e) where their omission from the

24  original record occurred from an accident).  While the plain language of Rule 10(e) suggests that

25  an appellate record could be expanded to correct an omission from mistake, the type of evidence

26  Appellant asks for was never alleged to be part of the record.  If such evidence was never

27

28                                          17

1   introduced, omission due to mistake or error could not occur.  Appellant's request to supplement

2   is denied.[14]

3                         **CONCLUSION**

4        After reviewing the record, Phillips' testimony indicates that the traffic stop was based on

5   at least reasonable suspicion.  As Appellant's vehicle had a defective license plate light, Phillips

6   had probable cause that Appellant was in violation of  California Vehicle Code § 24601.  Further,

7   under the totality of circumstances, which include Appellant's "bloodshot" eyes, his irregular

8   driving behavior in the Camp Four parking area, and his "startled" reaction, there was at least

9   reasonable suspicion for Phillips to determine that he was driving under the influence of alcohol.

10       Regarding recusal, the magistrate's remarks do not reveal a deep seated favoritism that

11   would make it impossible for him to render an impartial judgment.  He stated "I'm not prepared

12   to conclude *this* ranger came into this Court and perjured *himself* this morning . . . I'm not going

13   to assume that Phillips came in here today and put *his* career on the line simply to perjure *himself*

14   and get Mr. Pramik in trouble."  Suppression Hearing Transcript at 48.  (Emphasis added.)  There

15   is no indication in the language of the magistrate's remarks that he was commenting about his

16   opinion of law-enforcement officers in general and the record indicates that he was responding to

17   the arguments of the parties regarding truthfulness.  The magistrate did not act in error by failing

18   to recuse himself.

19       Accordingly, the Magistrate Court's denial of Appellant's Motion to Suppress is

20   AFFIRMED and the case is remanded to the Magistrate Court for further proceedings.

21   IT IS SO ORDERED.

22   **Dated:    July 28, 2006**                _____**/s/ Anthony W. Ishii**_____

23   0m8i78                           UNITED STATES DISTRICT JUDGE

24

---

25      [14]With respect to Defendant's request for judicial notice made in his reply brief, the request should have
26   been made in the initial motion so that the Government could have had the chance to respond.  Also, the second,
    third and fourth facts do not appear to be the type of facts that a court judicially notices.  The second and fourths
27   facts are vague.  The third fact has no meaning unless the second fact is more concrete.  In light of this, the request
    for judicial notice should be denied.

28                         18